[No. D007642. Fourth Dist., Div. One. Jan 23, 1990.]

BRANDY TROCHE et al., Plaintiffs and Appellants, v.
WILLIAM P. DALEY et al., Defendants and Respondents.

## COUNSEL

Griffin & Griffin and Andrew H. Griffin III for Plaintiffs and Appellants.

McInnis, Fitzgerald, Rees, Sharkey & McIntyre and Donald A. Vaughn for Defendants and Respondents.

## OPINION

**TODD, J.**—Brandy Troche, among others, sued Thomas A. Turney, among others, for legal malpractice. The trial court granted summary judgment in favor of Turney on the ground that the action was barred by the one-year statute of limitations. We affirm.

### FACTS

On May 13, 1981, Turney filed a lawsuit, *Troche v. United States of America* (81-0434-K(H)), in the United States District Court for Southern California on behalf of Troche. On August 3, 1982, William P. Daley, a codefendant of Turney in this legal malpractice action, was substituted as counsel for Troche in *Troche v. United States of America*.[1] On May 15, 1984, the district court dismissed *Troche v. United States of America* for failure to timely serve the United States. On June 28, 1984, Daley filed a notice of appeal in *Troche v. United States of America*. On August 16, 1984, Troche discharged Daley as her attorney in the case. On September 18, 1984, attorney Andrew H. Griffin was substituted in as Troche's attorney of record. On March 18, 1985, the district court filed an opinion that denied Troche's request to appeal in forma pauperis because the court was unable to certify the appeal as not frivolous.

On May 7, 1985, Troche filed this legal malpractice action against Turney and Daley individually and their purported partnership, Turney & Daley. On July 17, 1985, Griffin, acting on behalf of Troche, dismissed Turney as a defendant from this lawsuit without prejudice. On August 26, 1985, Griffin filed a first amended complaint, renaming Turney as a defendant.

On October 5, 1987, Turney moved for summary judgment on the ground the complaint is barred by the statute of limitations. The trial court

---

[1] Daley is not a party to this appeal. On April 17, 1989, this court granted Daley's unopposed motion to dismiss the appeal as to him. Troche had appealed a nonappealable order granting summary adjudication of issues.

heard oral argument on December 16, 1987, and found as a matter of law the cause of action arose in May 1984 and the statute of limitations ran in May 1985. The trial court ruled Turney was entitled to judgment as a matter of law.

## DISCUSSION

### I

Code of Civil Procedure section 437c, subdivision (c), provides, in part, that "[a] motion for summary judgment *shall* be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Italics added.) The California Supreme Court has stated that: "The summary judgment procedure is drastic and should be used with caution so that it will not become a substitute for a full trial. A summary judgment is proper only if the affidavits of the moving party would be sufficient to support a judgment in his favor and doubts as to the merits of the motion should be resolved in favor of the party opposing the motion. [Citation.]" (*Becker* v. *IRM Corp.* (1985) 38 Cal.3d 454, 458 [213 Cal.Rptr. 213, 698 P.2d 116, 48 A.L.R.4th 601].) ■ "[T]he purpose of a summary judgment 'is to expedite litigation by avoiding needless trials' . . . ." (*Burton* v. *Security Pacific Nat. Bank* (1988) 197 Cal.App.3d 972, 977 [243 Cal.Rptr. 277].) Therefore, "[i]f there are no triable issues, summary judgment is appropriate." (*Ibid.*) ■ In reviewing an order granting summary judgment, "the appellate court has the duty to determine whether a triable issue of material fact exists." (*Estate of Pitzer* (1984) 155 Cal.App.3d 979, 986 [202 Cal.Rptr. 855].)

"Where a motion for summary judgment has been granted and there is a sufficient ground to support the judgment entered thereon, it will be upheld regardless of the grounds on which the trial court based its decision." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 261, subd. (d), p. 268; *Snider* v. *Snider* (1962) 200 Cal.App.2d 741, 746 [19 Cal.Rptr. 709]; *Constance B.* v. *State of California* (1986) 178 Cal.App.3d 200, 211 [223 Cal.Rptr. 645].)

■ It is well established that: " 'The fact that the action of the [trial] court may have been based upon an erroneous theory of the case, or upon an improper or unsound course of reasoning, cannot determine the question of its propriety. . . . [A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason.' " (*Smith* v. *Walter E. Heller & Co.* (1978) 82 Cal.App.3d 259, 267 [147 Cal.Rptr. 1].) Thus, "[i]f the decision of the lower court is right, the judgment or order

will be affirmed regardless of the correctness of the grounds upon which the court reached its conclusion." (9 Witkin, Cal. Procedure, *op. cit. supra,* Appeal, § 259, at p. 266.)

In granting summary judgment, the trial court ruled the statute of limitations on Troche's claim against Turney started running on May 15, 1984. We disagree, finding as a matter of law that the statute of limitations began running on August 16, 1984; nonetheless, we conclude the statute of limitations did bar the claim against Turney and summary judgment was proper.

## II

The essential question is when did the statute of limitations start running on Troche's claim for legal malpractice against Turney.[2] The statute of limitations for legal malpractice, which is one year, starts to run when the client discovers, or should have discovered, the cause of action. (Code Civ. Proc., § 340.6.) The period is tolled during the times, inter alia, the client has not sustained actual injury or the negligent attorney continues to represent the client regarding the same matter. (*Ibid.*)[3]

Troche presents two alternative theories to support her contention the statute did not start running until March 1985, when her petition to file in forma pauperis an appeal of the dismissal of her federal action was denied because the appeal could not be certified as not frivolous. First, she argues she did not discover the malpractice until the March 1985 event. Second, she argues she did not sustain actual injury until the March 1985 event. We shall consider these arguments individually.

## A.

No one disputes the alleged breach of duty leading to the dismissal of the federal action occurred in 1981, when the federal entities were not served within the required time limits. However, the parties dispute the date on which Troche discovered the alleged negligence.

---

[2] For the purposes of the appeal, this court will assume Troche would have had a valid claim in her federal lawsuit had it been timely served.

[3] Section 340.6 of the Code of Civil Procedure provides in pertinent part: "(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained actual injury; [¶] (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred. . . ."

In an August 10, 1987, declaration, Troche declared Daley assured her an appeal of the dismissal of the federal action would be successful. Turney does not dispute this, and the assertion is supported by the record, which includes a notice of appeal in the federal action that was filed by Daley on June 28, 1984. However, Turney disputes Troche's assertion, contained in her October 30, 1987, declaration, that she did not discover the attorney negligence until March 18, 1985. Turney argues that the latest possible discovery by Troche was August 16, 1984, when she discharged Daley. Does this raise a material issue of fact that should have defeated Turney's motion for summary judgment? For the following reasons, we conclude it does not.

Turney relies on Troche's second amended complaint, in which she alleges she discharged Daley on August 16, 1984, after learning of his misrepresentations regarding the federal action.[4] ■ In summary judgment motions, the law allows reliance on the pleadings of one's adversary. (See *Joslin* v. *Marin Mun. Water Dist.* (1967) 67 Cal.2d 132, 147, 148 [60 Cal.Rptr. 377, 429 P.2d 889]; 6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 286, p. 586.) "A defendant, however, can, in addition to his declaration, rely upon an allegation of the complaint and there is no need that a defendant's declaration repeat matters already asserted in the complaint." (*Brown* v. *City of Fremont* (1977) 75 Cal.App.3d 141, 146 [142 Cal.Rptr. 46].)

Code of Civil Procedure section 437c, subdivision (b), provides that a summary judgment "motion shall be supported by affidavits, declarations, admissions, answers to interrogatories, depositions and matters of which judicial notice shall or may be taken." In *Walker* v. *Dorn* (1966) 240 Cal.App.2d 118, 120 [49 Cal.Rptr. 362], the court stated: " 'A judicial admission in a pleading (either by affirmative allegation or by failure to deny an allegation) is entirely different from an evidentiary admission. The judicial admission is not merely evidence of a fact; it is a conclusive concession of the truth of a matter which has the effect of removing it from the issues. . . .' "

■ Thus, it is quite clear from Troche's complaint that she discharged Daley on August 16, 1984, as her counsel in the federal action. This establishes that date as the latest date she could have discovered the alleged negligence. Troche's conclusionary assertion in her October 30, 1987, declaration cannot overcome the conclusive effect of what is in effect an admission in her complaint. We find as a matter of law that, at the latest, Troche

---

[4] This allegation, which also was contained in the first amended complaint, reads as follows: "Plaintiffs, exercising reasonable diligence learned of the misrepresentation and on August 16, 1984 the Plaintiffs and each of them discharged Defendant Daley as their attorney."

had knowledge of the alleged negligence on August 16, 1984, when she discharged Daley.

## B.

The key question remaining is when did Troche suffer actual harm: Was it May 15, 1984, when the federal suit was dismissed or was it, as Troche argues, March 18, 1985, when the district court denied Troche's request to appeal in forma pauperis? If Troche suffered actual harm on May 15, 1984, then the statute of limitations, which began to run at the latest on August 16, 1984, was not tolled. Under these circumstances, Troche's lawsuit against Turney, as alleged in the first amended complaint filed on August 26, 1985, was barred by the one-year statute of limitations. On the other hand, if Troche did not suffer actual harm until March 18, 1985, then the statute of limitations was tolled between August 16, 1984, and March 18, 1985, and the one-year statute of limitations does not bar Troche's lawsuit against Turney.

■ We find the harm occurred on May 15, 1984, when the district court dismissed the lawsuit. While Turney's alleged negligence occurred in 1981—when he failed to serve the appropriate federal entities—Troche did not suffer injury from that negligence until her lawsuit was dismissed.

Almost 20 years ago, our Supreme Court, in 2 companion cases (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176 [98 Cal.Rptr. 837, 491 P.2d 421] and *Budd* v. *Nixen* (1971) 6 Cal.3d 195 [98 Cal.Rptr. 849, 491 P.2d 433]), revised the rule that a cause of action for legal malpractice arises, and the limitation period begins, at the time of the negligent act. Concluding the rule as to the accrual of causes of action in the legal malpractice area should be the same as the rule for malpractice causes of action against other professionals, the Supreme Court held the statute of limitations in a legal malpractice action begins to run when the client discovers, or should discover, the facts establishing the elements of his cause of action (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, supra*, 6 Cal.3d at p. 194) *and* when the client sustains appreciable and actual harm (*Budd* v. *Nixen, supra*, 6 Cal.3d at p. 201.)

In *Budd* v. *Nixen, supra*, our Supreme Court discussed the concept of actual harm and noted a client may "discover his attorney's negligence without having suffered any consequential damage." (6 Cal.3d at p. 201.) The *Budd* court also observed: "If the allegedly negligent conduct does not cause damage, it generates no cause of action in tort. [Citation.] The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to

create a cause of action for negligence. [Citation.] Hence, until the client suffers appreciable harm as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice." (*Id*. at p. 200, fn. omitted.)

In *Neel, supra*, 6 Cal.3d 176, the court recounted the history of California decisions on the statute of limitations in legal malpractice actions, beginning with *Hays* v. *Ewing* (1886) 70 Cal. 127 [11 P. 602], in which a plaintiff sued in 1884, alleging defendant's negligence in a collection suit which was dismissed in November 1881. As the *Neel* court pointed out, the *Hays* court "accepted the date of dismissal of the suit—that is, the date upon which the client suffered damage—as the crucial point from which the statute of limitations should run. Indeed, the [*Hays*] court refused to adopt as the critical time the date of the affirmance of the dismissal on appeal." (*Neel, supra*, 6 Cal.3d at p. 183.)[5]

Our conclusion the date of actual injury to Troche was the date the federal action was dismissed is also supported by *Bell* v. *Hummel* (1982) 136 Cal.App.3d 1009 [186 Cal.Rptr. 688], in which a husband and wife sued a lawyer for failing to assert certain claims in their earlier medical malpractice lawsuit. The Court of Appeal found the husband's actual injury occurred when the trial court in the medical malpractice action denied a request to amend the complaint to add the husband as a plaintiff so to permit him to assert the claims. (*Id*. at p. 1017.) "Until the court denied appellant the right to join his wife's complaint as a coplaintiff in order to assert his claims arising from the alleged medical malpractice, his damage had not fully accrued. It was not until then that his claims were lost and the full impact of the wrongful acts settled leaving damage that was for all practical purposes irremediable. (See *Southland Mechanical Constructors Corp., supra*, 119 Cal.App.3d 417, 433 [173 Cal.Rptr. 917].) Prior to that time appellant had only seen that his attorney had committed an error, but no appreciable harm had resulted from the error until it could not be rectified, i.e., could not be remedied or cured. Up until that time, his damage was prospective and the statute of limitations was tolled. (See Code Civ. Proc., § 340.6, subd. (a)(1).)" (*Ibid*.)

Troche's attempts to appeal the dismissal of the federal action do not affect the date she suffered actual harm. (*DeGarmo* v. *Luther T. Mayo, Inc.*

[5] As pointed out by the *Neel* court, an unfortunate publisher's headnote to *Hays* v. *Ewing, supra*, 70 Cal. 127, which misstated the holding in the case, had generated the "peculiar rule" that the statue of limitations in legal malpractice cases begins to run when the negligence occurred. (*Neel, supra*, 6 Cal.3d at p. 183.) While *Neel* as well as *Budd* v. *Nixen, supra*, 6 Cal.3d 195, disavowed the rule pronounced in the headnote, *Neel* recites the actual holding in *Hays* with approval.

(1935) 4 Cal.App.2d 604, 606 [41 P.2d 366], disapproved on other grounds in *Neel, supra,* 6 Cal.3d at p. 190, fn. 29.)

### III

 Finally, we address whether the August 26, 1985, filing of Troche's first amended complaint, renaming Turney as a defendant, relates back to the May 7, 1985, filing of the original complaint for purposes of the statute of limitations. We conclude it does not.

On July 17, 1985, Troche dismissed Turney from the lawsuit without prejudice; she renamed him as a defendant when she filed her first amended complaint on August 26, 1985. The July 17 dismissal of Turney had the effect of removing him from the lawsuit as though no action had been filed against him. (*Cook* v. *Stewart McKee & Co.* (1945) 68 Cal.App.2d 758, 761 [157 P.2d 868].) Since the dismissal was without prejudice, Troche was free to later rename Turney in the lawsuit provided she acted within the statute of limitations.[6] A dismissal without prejudice is not a bar to another action by the plaintiff on the same cause of action if it is done within the period of the appropriate statute of limitations. (*Wells* v. *Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 784 [176 Cal.Rptr. 104, 632 P.2d 217].)

As indicated above, we have determined the latest date for the accrual of Troche's claim against Turney was August 16, 1984. Since the first amended complaint renaming Turney does not relate back to the date of filing of the original complaint (May 7, 1985), Troche's claim against Turney is barred by the one-year statute of limitations contained in Code of Civil Procedure section 340.6.

### DISPOSITION

Affirmed.

Wiener, Acting P. J., and Nares, J., concurred.

---

[6] Turney could not properly be added as a Doe defendant since his identity and involvement was known to Troche on the date she filed the original complaint. (See *Day* v. *Western Loan & Bldg. Co.* (1940) 42 Cal.App.2d 226 [108 P.2d 702].)